UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

A. SCOTT LOGAN,

    Plaintiff,

v.                               Case No: 2:18-cv-99-FtM-29MRM

UNITED STATES OF AMERICA, by
and through its Agent, the
Commissioner of Internal
Revenue,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dismiss (Doc. #16) filed on April 13, 2018. Plaintiff filed a Response in Opposition (Doc. #20) on May 4, 2018. Defendant filed a Reply to the Response to the Motion to Dismiss (Doc. #27) on May 18, 2018, and Plaintiff filed a Sur-Reply (Doc. #32) on May 31, 2018. For the reasons set forth below, the Court grants defendant's Motion to Dismiss.

**I.**

This cases arises out of the sale of Xerox stock in 1999. According to the Amended Complaint (Doc. #15): In 1986, Plaintiff A. Scott Logan (Plaintiff) co-founded Wood Logan Associates, Inc. (WLA), a variable annuity sales and marketing company. (Doc. #15, ¶¶ 11, 12.) WLA engaged in multiple mergers over the next several years, ultimately merging with Manulife Financial Corporation

(Manulife) in 1999. (Id. ¶¶ 25, 26, 33, 34.) As part of that merger, Manulife acquired Plaintiff's shares in WLA. (Id. ¶ 34.) Plaintiff sought to invest a portion of his proceeds from the WLA merger into foreign currencies. (Id. ¶ 45-48.) Upon the advice of his legal and tax advisors, Plaintiff used multiple trusts (the Logan Trusts) to form an entity called Tigers Eye Trading, LLC (Tigers Eye). (Id. ¶¶ 59, 72.) Plaintiff, as trustee of the Logan Trusts, used Tigers Eye to execute a trading strategy in the Euro currency on behalf of the Logan Trusts. (Id. ¶¶ 45, 48, 72.) Plaintiff withdrew the Logan Trusts from Tigers Eye in December of 1999, and "Tigers Eye distributed Xerox stock to the Logan Trusts in redemption of their interests." (Id. ¶ 73.) The Logan Trusts subsequently sold the Xerox stock. (Id. ¶ 74.)

In 2000, the Logan Trusts filed their 1999 federal income tax returns and reported that the Xerox stock sale resulted in a short-term capital loss. (Id. ¶¶ 75, 76, 78.) Plaintiff then "reported the trust losses from the sale of Xerox stock on his 1999 Federal income tax return." (Id. ¶ 79.) In 2002, the IRS audited Tigers Eye, and ultimately determined that Plaintiff was not entitled to claim the short-term capital loss for the 1999 Xerox stock sale. (Id. ¶¶ 82, 96.) As a result, the IRS assessed against Plaintiff a $2,456,598.40 gross valuation misstatement penalty. (Id. ¶ 127.)

In June of 2017, Plaintiff filed an administrative claim for a refund with the IRS (Original Claim). (Doc. #15-1.) In the Original Claim, Plaintiff asserts that he is entitled to a refund of the $2,465,598.40 penalty the IRS assessed against him because (1) Plaintiff reasonably relied upon the advice of his legal and tax advisors in reporting that the Xerox stock sale resulted in a short-term capital loss; and (2) when the IRS assessed the penalty against Plaintiff, the IRS retroactively enforced law that did not exist when Plaintiff filed his 1999 tax return. (Id., pp. 4-6.) On March 31, 2018, Plaintiff filed an Amended Complaint (Doc. #15), seeking a refund of the $2,465,598.40 penalty the IRS assessed against him. (Id. ¶ 105.)

The Amended Complaint asserts four grounds for Plaintiff's entitlement to a refund.[1] (Id. ¶¶ 107-141.) Counts One and Two assert the same two grounds for relief stated in the Original Claim. (Doc. #15, ¶¶ 107-119; Doc. #15-1, pp. 4-6.) Count Three asserts that Plaintiff is entitled to a refund because the IRS failed to compare "the correct adjusted basis of the Logan Trusts' Xerox stock versus the reported adjusted basis of the Xerox stock" and therefore "did not provide grounds for gross valuation

---

[1] The Amended Complaint is structured as a one-count complaint. Below the single count, the Amended Complaint asserts four grounds for Plaintiff's entitlement to a refund. Because the Amended Complaint alleges that each ground is "sufficient on its own merit to require a refund," the Court treats each ground as an individual Count. (Doc. #15, ¶ 104.)

penalties against" Plaintiff in the Notice of Deficiency. (Doc. #15, ¶¶ 124, 129.) Count Four asserts that Plaintiff is entitled to a refund because the Revenue Agent that examined Tigers Eye failed to obtain managerial approval to assess the penalty against Plaintiff. (Id. ¶¶ 131-141.)

On April 13, 2018, the United States of America (Defendant) filed a Motion to Dismiss. (Doc. #16.) In it, Defendant argues the Court lacks subject matter jurisdiction over Counts III and IV because, under the variance doctrine, the arguments asserted in those Counts were not first asserted in the Original Claim. On May 1, 2018, Plaintiff filed an amended administrative claim for refund with the IRS (Amended Claim) (Doc. #20-9), which includes the arguments asserted in Counts III and IV of the Amended Complaint.

## II.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action if the court lacks subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) may assert either a factual attack or a facial attack on jurisdiction. Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir.2003). A facial attack requires the Court to determine whether the pleader has sufficiently alleged a basis for subject matter jurisdiction. Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008). In contrast, a factual attack

challenges "the existence of subject matter jurisdiction . . . irrespective of the pleadings . . . ." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal citation and quotation omitted). Thus, in reviewing a factual attack on subject matter jurisdiction, the Court may consider "material extrinsic from the pleadings, such as affidavits or testimony." Stalley, 524 F.3d at 1233.

### III.

Defendant asserts a factual attack on the Court's subject matter jurisdiction over Counts III and IV. In particular, Defendant argues the Court lacks subject matter jurisdiction over Counts III and IV because Plaintiff failed to raise the arguments in those Counts in his Original Claim prior to filing the Amended Complaint.

**A. The Variance Doctrine**

Under the variance doctrine, "[a] taxpayer may not sue the United States for a tax refund until [he] first files a refund claim with the government" in compliance with 26 U.S.C. § 7422 and its accompanying treasury regulations. Charter Co. v. United States, 971 F.2d 1576, 1579 (11th Cir. 1992). Section 7422's accompanying regulations "require the taxpayer to detail each ground upon which a refund is claimed." Id. (citing Treas. Reg. § 301.6402-2(b)(1)). Any subsequent litigation of the "government's denial of a refund claim is limited to the grounds

fairly contained within the refund claim." Id. Thus, a federal court has "no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." Id. at 1579. The purpose of the variance doctrine is to allow the "IRS to resolve disputes in the first instance without litigation . . . ." Sanders v. United States, 740 F.2d 886, 890 (11th Cir. 1984).

Courts employ an "essential requirements" test to determine whether a taxpayer's lawsuit impermissibly varies from the grounds stated in the underlying administrative refund claim. Charter, 971 F.2d at 1580. Under this test, "[a]lthough crystal clarity and exact precision are not demanded, at a minimum the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand." Id.

**B. Counts III and IV do not Comply with the Variance Doctrine**

Plaintiff's Original Claim contains two grounds for relief: that Plaintiff is entitled to a refund because (1) Plaintiff reasonably relied upon the advice of his legal and tax advisors when he reported that the Xerox stock sale resulted in a short-term capital loss; and (2) when the IRS assessed the penalty against Plaintiff, the IRS retroactively enforced law that did not exist when Plaintiff filed his 1999 tax return. (Doc. #15-1, pp. 4-6.) These two grounds for relief are also asserted in the Amended Complaint as Counts I and II. (Doc. #15, ¶¶ 107-119.)

The Amended Complaint contains two additional grounds for relief (Counts III and IV) which were not specifically raised in the Original Claim. Count III asserts that Plaintiff is entitled to a refund because the IRS failed to compare "the correct adjusted basis of the Logan Trusts' Xerox stock versus the reported adjusted basis of the Xerox stock" and therefore "did not provide grounds for gross valuation penalties against" Plaintiff in the Notice of Deficiency. (Doc. #15, ¶¶ 124, 129.) Count IV asserts that Plaintiff is entitled to a refund because the Revenue Agent that examined Tigers Eye failed to obtain managerial approval to assess the penalty against Plaintiff. (Doc. #15, ¶¶ 131-141.)

The Court finds that Counts III and IV substantially vary from the Original Claim. Counts I and II, which mirror the two grounds asserted in the Original Claim, essentially state as an affirmative defense that Plaintiff was unaware that he improperly reported the Xerox stock sale proceeds on his 1999 federal tax return. In contrast, Counts III and IV, which were not raised in the Original Claim, state that the IRS failed to comply with certain procedural requirements prior to assessing the penalty against Plaintiff. While all four Counts seek the same ultimate relief – a refund of the $2,456,598.40 penalty assessed against Plaintiff – Counts III and IV allege Plaintiff is entitled to the refund for entirely different reasons than those asserted in the Original Claim. In fact, the Amended Complaint even states that

each Count "is sufficient on its own merit to require a refund" of the penalty assessed against Plaintiff. (Doc. #15, ¶ 104.) However, the IRS was not given an opportunity to consider two of these independent bases for a refund (Counts III and IV) prior to Plaintiff's filing the Amended Complaint.

Although Counts III and IV were not specifically raised in the Original Claim, Plaintiff argues they nonetheless do not substantially vary from the Original Claim because the IRS is required to investigate all possible grounds for recovery upon receiving a refund claim. See Lewis v. Reynolds, 284 U.S. 281, 283 (1932); Rev. Rul. 81-87, 1981-1 C.B. 580. Thus, Plaintiff argues, Counts III and IV were implicitly included in his Original Claim. The Court disagrees.

In Lewis, the Supreme Court held that the IRS has the authority to "reaudit a return whenever repayment is claimed" by a taxpayer, even if the statute of limitations "may have barred the assessment and collection of any additional" tax. Lewis, 284 U.S. at 283. The Court reasoned that the government has the authority "to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." Id. Rev. Rul. 81-87 expands upon the holding in Lewis and provides that, when the IRS receives a claim for a refund, "the correct tax is to be determined by including all adjustments, regardless of the expiration of the periods of limitation," but a refund will only

be granted if it is "covered by [a] timely claim[]." Rev. Rul. 81-87 further provides that the IRS must ensure it considers all adjustments beneficial to the taxpayer, so as not to detriment "the taxpayer by including only adjustments that increase the tax."

While Lewis and Rev. Rul. 81-87 do indeed provide that the IRS must consider all adjustments - both detrimental and beneficial to a taxpayer - they do not displace the variance doctrine. They simply address a taxpayer's entitlement to a refund, not whether a taxpayer's administrative claim provides a district court with subject matter jurisdiction over a subsequent tax refund lawsuit. Thus, although a litigant may be entitled to a refund under Lewis and Rev. Rul. 81-87, courts must still enforce the variance doctrine. See Charter, 971 F.2d at 1579 (holding that the "district court correctly declined to consider . . . claim on the basis of the variance doctrine").

Plaintiff lastly argues that Counts III and IV do not substantially vary from the Original Claim because the Original Claim contained a checked box which stated that Plaintiff sought a refund for any "[r]easonable cause or other reason allowed under the law . . . ." (Doc. #15-1, p.1.) Thus, Plaintiff argues, the claims stated in Counts III and IV were fairly included in the Original Claim, and the IRS should have independently investigated the issues raised in those Counts when it considered the Original Claim. The Court disagrees.

The variance doctrine requires a "taxpayer to do more than give the government a good lead based upon the government's purported ability to infer interconnectedness." Charter, 971 F.2d at 1579-80. Indeed, the IRS may take a refund claim "at its face value and examine only those points to which [its] attention is necessarily directed." Alabama By-Prod. Corp. v. Patterson, 258 F.2d 892, 900 (5th Cir. 1958).[2] The Court therefore finds the checked box on Plaintiff's Original Claim insufficient to identify the "essential elements" of the refund demands asserted in Counts III and IV.

In sum, the Court finds that Counts III and IV substantially vary from Plaintiff's Original Claim. Thus, under the variance doctrine, the Court lacks subject matter jurisdiction over Counts III and IV.

**C. The Amended Claim Does not Retroactively Establish Subject Matter Jurisdiction**

On May 1, 2018, after Defendant filed its Motion to Dismiss, Plaintiff filed his Amended Claim with the IRS, which includes the arguments made in Counts III and IV of the Amended Complaint. (Doc. #20-9.) Plaintiff relies on Mutual Assurance, Inc. v.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

United States, 56 F.3d 1353 (11th Cir. 1995) and St. Joseph Lead Co. v. United States, 299 F.2d 348 (2d Cir. 1962) to argue that the Amended Claim "relates back to and constitutes part of the Original Claim." (Doc. #20, p. 15.) Thus, Plaintiff contends, the Amended Claim cures "any perceived jurisdictional questions" under the variance doctrine because the Amended Complaint does not substantially vary from the Amended Claim. The Court disagrees.

In Mutual, the plaintiff filed an administrative claim for a refund with the IRS, seeking $495,728 in overpaid taxes for the 1987 tax year. Mutual, 56 F.3d at 1354. The IRS granted the plaintiff's request and refunded it in full. Id. Nine days after the statute of limitations for filing a claim with the IRS for the 1987 tax year passed, the IRS "discovered a miscalculation of the company's unpaid loss reserves for the 1987" tax year and determined that the plaintiff was entitled to an additional $489,601 refund. Id. The plaintiff then filed a second administrative refund claim, seeking the additional $489,601 refund; the IRS denied the second claim because it was not filed within the applicable statute of limitations. Id. The plaintiff subsequently filed a lawsuit against the IRS to recover the $489,601. Id. The government moved to dismiss the complaint for lack of subject matter jurisdiction because the litigation arose from an untimely administrative claim. Id.

The Eleventh Circuit held that although the plaintiff filed the second administrative claim outside the statute of limitations period, it was not time barred because the second claim related back to the first, timely administrative claim. Id. at 1356-57. The court reasoned that the second claim simply corrected the "defective prayer for relief" in the original claim, which incorrectly sought a refund of $495,728 instead of "the actual overpayment for that year [which] was $985,329." Id. at 1356.

Similarly, in St. Joseph Lead, the plaintiff filed an administrative claim for a refund with the IRS, which the IRS denied. St. Joseph Lead, 299 F.2d at 349. The plaintiff then filed a lawsuit against the IRS in order to receive its tax refund. Id. After the plaintiff filed its complaint, the IRS notified the plaintiff that it was reconsidering its denial of the administrative claim because the IRS incorrectly computed the plaintiff's tax liability. Id. Upon learning of this, although the statute of limitations for filing a claim had passed, the plaintiff "reexamined its figures" and "filed an amended claim seeking the benefit of a correct computation." Id. The IRS also denied the amended claim. Id. Afterwards, the plaintiff amended its complaint, seeking a refund for the amount stated in its amended administrative claim. Id. at 350. The IRS argued it was entitled to summary judgment because the amended claim "was barred by the statute of limitations." Id.

The Second Circuit held that the amended claim was not time barred because the amended claim corrected an accounting error of the original, timely filed claim. Id. at 351. The court so held because "the original claim was closely related to the amended claim" and therefore "relate[d] back to the time the original claim was filed and the original action brought." Id.

Here, the Court finds St. Joseph Lead and Mutual unpersuasive because those cases do not establish that the Amended Claim renders the variance doctrine inapplicable. The courts in Mutual and St. Joseph Lead analyzed whether the amended administrative claims were barred by the statute of limitations, not whether the complaints substantially varied from the underlying administrative claims. See Mutual, 56 F.3d at 1355 (noting that the "sole issue raised on" appeal was whether amended claim was barred by the statute of limitations); St. Joseph Lead, 299 F.2d at 350 (noting that "[t]he issue to be resolved" was whether the amended claim "f[ell] within the limitations period"). The timeliness of Plaintiff's Amended Claim is not an issue before the Court. Instead, the thrust of Defendant's Motion to Dismiss is that the Amended Complaint substantially varies from Plaintiff's Original Claim.

Plaintiff must first afford the IRS an opportunity to consider the arguments in the Amended Claim before asserting them in his Amended Complaint. For instance, the plaintiff in St. Joseph Lead

did not amend its complaint until after the IRS considered and denied its amended administrative claim. St. Joseph Lead, 299 F.2d at 349-50. Similarly, the plaintiff in Mutual did not file its complaint until after the IRS denied its amended administrative claim. Mutual, 56 F.3d at 1354. Here, however, Plaintiff filed his Amended Claim *after* he filed his Amended Complaint. Because "subject-matter jurisdiction depends on the state of things at the time of the action brought," the Court "look[s] to the [A]mended [C]omplaint to determine jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473 (2007)(internal citation and quotation omitted). At the time Plaintiff filed his Amended Complaint, the Court was without subject matter jurisdiction over Counts III and IV.[3] Mutual and St. Joseph do not alter the Court's subject matter jurisdiction analysis.

In conclusion, the Court lacks subject matter jurisdiction over Counts III and IV because they substantially vary from the grounds asserted in the Original Claim. Counts III and IV are therefore dismissed.

---

[3] Defendant additionally argues the Court lacks subject matter jurisdiction over Counts III and IV because the Amended Claim is a nullity. Specifically, Defendant argues that once Plaintiff filed a lawsuit for a tax refund, the IRS lacked jurisdiction to consider the Amended Claim. Because Plaintiff filed the Amended Claim after the Amended Complaint, thus depriving the Court of subject matter jurisdiction over Counts III and IV as discussed *supra*, the Court need not assess the merits of that issue.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss (Doc. #16) is **GRANTED as follows:**

1. Counts III and IV are **dismissed without prejudice** for lack of subject matter jurisdiction.

**DONE and ORDERED** at Fort Myers, Florida, this 21st day of June, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record